# IN THE COURT OF COMMON PLEAS
## OF DAUPHIN COUNTY, PENNSYLVANIA

| | |
|---|---|
| TANYA M. STORM and<br>HENRY C. STORM, JR.,<br>   Plaintiffs | : <br> : <br> : <br> : |
| v. | : NO. 2006 CW 1134a |
| RELIANCE FINANCE CO. and<br>RELIANCE FINANCE CO. d/b/a<br>CAPITAL CITY CARS,<br>   Defendants | : <br> : <br> : CIVIL ACTION - LAW<br> : JURY TRIAL DEMANDED |

## NOTICE

   YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

   YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Dauphin County Lawyer Referral Service
213 N. Front Street
Harrisburg, PA 17101
Telephone No. (717) 232-7536

## AVISO

USTED HA SIDO DEMANDADO EN LA CORTE. Si usted desea defenderse de las quejas expuestas en las paginas siguientes, debe tomar accion dentro de veinte (20) dias a partir de la fecha en que recibio la demanda y el aviso. Usted debe presentar comparecencia escrita en persona o por abogado y presentar en la Corte por escrito sus defensas o sus objeciones a las demandas en su contra.

Se le avisa que si no se defiende, el caso puede proceder sin usted y la Corte puede decidir en su contra sin mas aviso o notificacion por cualquier dinero reclamado en la demanda o por cualquier otra queja o compensacion reclamados por el Demandante. USTED PUEDE PERDER DINERO, O PROPIEDADES U OTROS DERECHOS IMPORTANTES PARA USTED.

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE.
SI USTED NO TIENE O NO CONOCE UN ABOGADO, YAYA O LLAME A LA
OFICINA EN LA DIRECCION ESCRITA ABAJO PARA AVERIGUAR DONDE
PUEDE OBTENER ASISTENCIA LEGAL.**

Dauphin County Lawyer Referral Service
213 N. Front Street
Harrisburg, PA 17101
Telephone No. (717) 232-7536

## IN THE COURT OF COMMON PLEAS
## OF DAUPHIN COUNTY, PENNSYLVANIA

| | |
|---|---|
| **TANYA M. STORM and** | : |
| **HENRY C. STORM, JR.,** | : |
| **Plaintiffs** | : |
| | : |
| **v.** | **: NO.** |
| | : |
| **RELIANCE FINANCE CO. and** | : |
| **RELIANCE FINANCE CO. d/b/a** | : |
| **CAPITAL CITY CARS,** | **: CIVIL ACTION - LAW** |
| **Defendants** | **: JURY TRIAL DEMANDED** |

## COMPLAINT

1. Plaintiffs, Henry C. Storm, Jr. and Tanya M. Storm ("Storm") are adult individuals, husband and wife, residing at 43 East Columbia Road, Enola, Pennsylvania 17025.

2. Defendant, Reliance Finance Company ("Finance Co."), is a corporation authorized to do business in the Commonwealth of Pennsylvania and, at all times relevant hereto, was engaged in the business of financing sales of used motor vehicles, with its principal offices located at 800 South Cameron Street, Harrisburg, Dauphin County, Pennsylvania 17104.

3. Defendant, Reliance Finance Company d/b/a Capital City Cars operates a used car dealership located at 800 South Cameron Street, Harrisburg, Pennsylvania 17104.

4. At all times relevant hereto, Defendant Capital City Cars ("Dealer") was and is engaged in the business of selling and servicing used motor vehicles and in the business of arranging for the financing of agreements relating to the sale of used motor vehicles, and rendering advice and counsel to consumers with regard to and in relation to same.

5. At all relevant times Michael Smith [or Mike S.], the salesman involved herein, was an agent and servant of Defendant Dealer and was acting within the scope of his authority or apparent authority.

6. Defendant Dealer and Defendant Finance Co., in the ordinary course of their business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or by written agreement which is payable in more than four installments.

7. Upon information and belief, Defendants operate a "buy here – pay here" dealership and concentrate on those who perceive themselves as high credit risks who would have difficulty finding automobile financing elsewhere.

8. Upon information and belief, Defendant Dealer and Defendant Finance Co. established a used car lot at 800 Cameron Street targeted at persons with poor credit. Defendant Dealer arbitrarily increases the price of any vehicle it sells that is financed to a person with poor credit. Thus, there are two prices for any vehicle, a "cash" price and a "credit" price. At no time is the credit customer told the true cost to them for financing or the different prices of the vehicle.

9. On or about July 25, 2005, Plaintiff Tanya Storm, who had credit problems and who was relatively unsophisticated with respect to cars, visited Defendant Dealer's used car lot located at 800 Cameron Street to find out about buying a vehicle.

10. During this visit, Plaintiff told Defendant Dealer's sales agent that she wanted to buy a vehicle that would be reliable transportation to drive to work and that would be large enough for her family. The sales agent for Defendant Dealer asked her what she could afford to make as a down payment and then showed her a few vehicles without disclosing prices.

11. Defendant Dealer's agent informed Plaintiff that all vehicles financed by them required the purchase of a service contract which would provide warranty coverage of 24 months or 30,000 miles.

12. In the course of the transaction, Plaintiff Tanya Storm received from Defendant Dealer's agent a Buyers Guide in the form as shown in the Federal Trade Commission (FTC) Used Motor Vehicle Trade Regulation Rule (hereafter "Used Car Rule"), 16 C.F.R. Part 455. The Buyers Guide was checked in the box next to "AS IS--NO WARRANTY" (hereafter "AS IS provision"). A copy of the Buyers Guide is attached hereto as Exhibit A.

13. Plaintiff was shown a 1998 Ford and when she asked about the price, Defendant's sales agent told her she would need $500 down and that Defendant would finance the vehicle, including a service contract that was required for any credit transaction.   Exhibits B-1 and B-2, attached, are copies of the purchase and service contracts.

14. Plaintiff Tanya Storm was not told the price of the 1998 Ford Windstar.

15. The price of the 1998 Ford Windstar was not disclosed in advertising and was not posted on the vehicle or elsewhere on the lot and was not disclosed during sales negotiations.

16. Plaintiff's questions concerning the price were answered with a reference to the consumer's poor credit and the opportunity to have the vehicle financed through Defendant Dealer.

17. Plaintiffs believe and therefore aver that part of the financing costs was hidden in the high sales price.

18. On July 28, 2005, Plaintiff Tanya Storm returned to the dealership and financed the purchase of the 1998 Ford Windstar by means of a motor vehicle retail installment sales contract which Defendant Dealer immediately assigned to Defendant Finance Co.  Exhibit C, attached, is a copy of the retail installment contract.

19. Defendant Dealer did not allow Plaintiff Tanya Storm to read the contract before signing it and instead pointed out the terms and where she was to sign.  The contract provided a purchase price of $5,495.  The undisclosed blue book value of the vehicle was closer to $3,400.

20. Upon information and belief, had Ms. Storm purchased her vehicle for cash Defendant Dealer would have quoted her a lower price.

21. Upon information and belief, it is the standard policy and practice of Defendants to include a hidden finance charge by adding a costly service contract and to show such cost in the "amount financed" and to exclude it from the "finance charge" and the "annual percentage rate."

22. The retail installment contract financed a purported "amount financed" of $6,407.20 at a purported annual percentage rate of 19.9%.  The undisclosed rate was actually 35.514%.

23. Defendant Dealer informed Ms. Storm that the $900 service contract was a requirement of the credit sale for the 1998 Ford Windstar.

24. As a result, Dealer was prohibited from disclaiming implied warranties under the Magnuson Moss Consumer Warranty Act, 15 U.S.C. §2308 (""Magnuson-Moss").

25. At the time Defendant Dealer's agent gave Plaintiff Tanya Storm the Buyers Guide, the agent represented that the service contract was a requirement for financing the vehicle and that the AS IS provision did not change that fact.

26. At the time of the transaction, Plaintiff Tanya Storm did not intend nor agree to a purchase of the Ford Windstar without implied warranties, and, as a result of Dealer's statements, had no understanding or agreement to any exclusion of implied warranties.

27. The transmission of the Ford Windstar sold to Ms. Storm was defective at the time of the sale. Within two months of the date of sale, Plaintiffs experienced erratic operation of the transmission which became progressively worse and made the Ford difficult to drive. As a result, the vehicle was unfit for ordinary driving purposes.

28. On or about October 12, 2005, Plaintiff Tanya Storm contacted Defendant Dealer's service center about the failing transmission and also reported that her vehicle needed an oil change and that the steering "clicked" whenever it was turned. Plaintiff was instructed to return the vehicle so Plaintiff immediately drove it to Defendant's place of business for the needed repairs.

29. Defendant Dealer confirmed that the transmission was defective and needed to be replaced and that it would search for a replacement to be covered under the Service Contract.

30. Thereafter, Plaintiff Tanya Storm contacted Defendant Dealer daily about the status of the repairs because she needed her vehicle for work and daily transportation.

31. In response to Plaintiff's communications about the repairs, Defendant Dealer initially indicated that they were searching for another transmission. Two or three weeks later, Defendant indicated that no service would be performed until Mr. Storm's car loan, involving a separate transaction with Defendant Dealer, was brought current. Even after Mr. Storm's other

auto loan was brought current, Defendant Dealer again represented that they were still searching for a transmission.

32. As of November 25, 2005, Defendant Dealer still had not fixed the 1998 Ford Windstar, claiming that no transmission was available, so Plaintiff contacted a local Ford dealership and was told that a replacement transmission for her Ford Windstar was available and that it could be delivered in one day.

33. As a result of the unreasonable time period that Defendant Dealer had the Ford Windstar without making any repairs and due to Defendant Dealer's questionable refusal to make repairs based on reasons totally unrelated to the Service Contract, Plaintiffs informed Defendants on November 29, 2005 that they wanted to cancel the contract and have all their money returned.   Exhibit D attached hereto is a copy of Plaintiffs' letter to Defendants.

34. Plaintiffs, through their attorney, confirmed their cancellation of the contract by letter of November 29, 2005, a copy of which is attached hereto as Exhibit E, and demanded return of all amounts paid on the transaction.

## COUNT I - CANCELLATION OF CONTRACT

35. Plaintiffs hereby incorporate paragraph 1-34 above as if the same were fully set forth herein at length.

36. Count I is an action against both defendants pursuant to U.C.C. § 2-601 or, in the alternative, § 2-608, to cancel the contract due to Defendant's breach of implied warranties and service contract, and for incidental and consequential damages.

### A. Breach of Implied Warranty of Merchantability

37. Defendant Dealer was, at all relevant times, a merchant with respect to used cars, as that term is defined in U.C.C. § 2-104(1).

38. A warranty that the 1998 Ford Windstar was in merchantable condition was implied by law in the instant transaction, pursuant to U.C.C. § 2-314.

39. The 1998 Ford Windstar was not in merchantable condition when sold to Plaintiffs or at any time thereafter, and was not fit for the ordinary purpose for which a car is used.

40. Defendant Dealer breached the warranty of merchantability implied by law in the instant transaction.

### B. Breach of Implied Warranty of Fitness

41. A warranty that the 1998 Ford Windstar was fit for the particular purpose of commuting daily to work from Plaintiff's home and back was implied by law in the instant transaction, pursuant to U.C.C. § 2-315.

42. The 1998 Ford Windstar was not fit for the particular purpose of commuting daily to work from Plaintiff's home and back.

43. Defendant Dealer breached the warranty of fitness for the particular purpose implied by law in the instant transaction.

### C. Rejection

44. Plaintiffs rightfully and effectively rejected the 1998 Ford Windstar on November 29, 2005.

### D. Revocation of Acceptance

45. Plaintiffs assert revocation of acceptance as an alternate ground for cancellation of the contract, in addition to rejection.

46. The nonconformities of the 1998 Ford Windstar resulting from the breaches of warranty described above substantially impaired the value of the Ford Windstar to Plaintiffs.

47. Plaintiffs accepted the 1998 Ford Windstar on the reasonable assumption that the nonconformities resulting from the breaches of warranty described above would be cured.

48. The nonconformities of the 1998 Ford Windstar resulting from the breaches of warranty described above were not seasonably, or ever, cured.

49. Plaintiffs accepted the 1998 Ford Windstar without discovery of all of the nonconformities resulting from the breaches of warranty described above.

50. Plaintiffs justifiably and effectively revoked acceptance of the 1998 Ford Windstar on November 29, 2005.

### E.  Breach of Duty of Good Faith

51. Defendant Dealer has breached its duty of good faith implied in the transaction by U.C.C. § 1-203 by:

a.  Breaching the service contract and implied warranties described above;
b.  Misrepresenting to Plaintiffs the reason for the delay in replacing the defective transmission.
c.  Misrepresenting to Plaintiffs that the required repairs were being made when in fact they had not.

### F.  Liability of Assignee

52.  The contract (Exhibit B) contained the following clause:

### NOTICE

*Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.*

53. Defendant Finance Co. is liable for all claims and defenses which Plaintiffs have against Defendant Dealer.

### G.  Damages

54. Defendant Dealer and Defendant Finance Co. have refused, and continue to refuse, to comply with Plaintiffs' rejection or, alternatively, their revocation of acceptance of the 1998 Ford Windstar, and have refused to return all amounts paid by Plaintiffs.

55. As a result of the above-described actions of Defendants, Plaintiffs have suffered damages in the amount of:

a.  $1,556.75, representing the amounts paid by Plaintiffs on the transaction;

b. $5,495.00 consequential damages, representing Plaintiff's loss of use of the Ford

Windstar and/or expenditures for substitute transportation.

**WHEREFORE**, the plaintiff prays that this Court:

    A. Declare that the contract involved herein is canceled;

    B. Enter judgment for Plaintiffs and against Defendant Dealer in the amount of

$7,051.75 actual damages;

    C. Enter judgment for Plaintiffs and against Defendant Finance Co. in the amount of

$1,556.75 actual damages, and, if the contract is not otherwise canceled, declare the remainder of

the contract obligation void and unenforceable by Defendant Finance Co.; and

    D. Grant such other relief as may be just and proper.

## COUNT II - DAMAGES FOR BREACH OF WARRANTY

    56. Plaintiffs hereby incorporates paragraph 1-55 above as if the same were fully set forth

herein at length.

    57. Count II is an action, brought in the alternative to Count I in the event that Plaintiffs

cancellation is not given legal effect, against both defendants pursuant to U.C.C. §§ 2-714 and 2-

715 for damages for breach of contract due to Defendant Dealer's breach of service contract and

implied warranties.

    58. The 1998 Ford Windstar, as accepted, was without any value.

    59. As a result of the above-described actions of Defendant Dealer, Plaintiffs have

suffered damages in the amount of:

    a. $5,495.00, representing the difference between the Ford as warranted (the purchase

    price) and the value as accepted by Plaintiffs (worthless);

    b. $1,556.75 consequential damages, representing the cost of financing the transaction;

    d. $5,495.00 consequential damages, representing Storm's loss of use of the ford and/or

    expenditures for substitute transportation; and

**WHEREFORE**, the plaintiff prays that this Court:

A.  Enter judgment for Plaintiffs and against defendant Dealer in the amount of $12,546.75;

B.  Enter judgment for Plaintiffs and against defendant Finance Co. in the amount of $7,051.75 actual damages, and declare the remainder of the contract obligation void and unenforceable by Defendant Finance Co.; and

C.  Grant such other relief as may be just and proper.

## COUNT III - CANCELLATION UNDER MAGNUSON-MOSS ACT

60. Plaintiffs hereby incorporates paragraph 1-59 above as if the same were fully set forth herein at length.

61. Count III is an action against both defendants brought pursuant to § 2310(d) of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 (hereafter "Magnuson-Moss") for actual damages and to cancel the contract pursuant to the Plaintiffs' rejection, or in the alternative revocation of acceptance, for Defendant's breach of implied warranties and service contract.

62. The 1998 Ford Windstar is a consumer product, as that term is defined in § 2301(1) of Magnuson-Moss, and was manufactured after July 4, 1975.

63. The Defendant Dealer is a warrantor, as that term is defined in § 2301(5) of Magnuson-Moss.

64. The Plaintiffs are consumers, as that term is defined in § 2301(3) of Magnuson-Moss.

65. The Defendant Dealer has no dispute resolution mechanism which meets the requirements of 16 C.F.R. Part 703, promulgated by the Federal Trade Commission (FTC) pursuant to § 2310(a)(2) of Magnuson-Moss.

66. Plaintiffs gave Defendant Dealer a reasonable opportunity, on several occasions, as described above, to cure its failure to comply with its service contract and implied warranties and Defendant Dealer did not cure.

**WHEREFORE**, the Plaintiffs pray that this Court:

A. Declare that the contract involved herein is canceled;

B. Enter judgment for Plaintiffs and against Defendant Dealer in the amount of $12,546.75 actual damages;

C. Enter judgment for Plaintiffs and against Defendant Finance Co. in the amount of $1,556.75 actual damages and, if the contract is not otherwise canceled, declare the remainder of the contract obligation void and unenforceable by Dealer Finance Co.;

D. Award the Plaintiffs their costs and reasonable attorney fees to be paid jointly and severally by Defendants Dealer and Finance Co.; and

E. Grant such other relief as may be just and proper.

## COUNT IV - DAMAGES UNDER MAGNUSON-MOSS ACT

67. Plaintiffs hereby incorporates paragraph 1-66 above as if the same were fully set forth herein at length.

68. Count IV is an action, brought in the alternative to Count III in the event that the plaintiffs cancellation is not given legal effect, against both Defendants pursuant to § 2310(d) of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 (hereafter "Magnuson-Moss") for actual and punitive damages for Defendant Dealer's breach of service contract and implied warranties.

**WHEREFORE**, the plaintiff prays that this Court:

A. Enter judgment for Plaintiffs and against Defendant Dealer in the amount of $12,546.75 actual damages;

B.  Enter judgment for Plaintiffs and against Defendant Finance Co. in the amount of $1,556.75 actual damages, and declare the remainder of the contract obligation void and unenforceable by Defendant Finance Co.

C.  Enter judgment for Plaintiffs and against Defendant Dealer in the amount of $20,000 punitive damages;

D.  Award the Plaintiffs their costs and reasonable attorney fees to be paid jointly and severally by Defendants Dealer and Finance Co.; and

E.  Grant such other relief as may be just and proper.

## COUNT V - UNFAIR AND DECEPTIVE ACTS AND PRACTICES

69.  Plaintiffs hereby incorporates paragraph 1-68 above as if the same were fully set forth herein at length.

70.  Defendants Dealer and Finance Co. are persons as defined in the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq., (hereinafter "CPL").

71.  Defendants violated the Pennsylvania CPL by, inter alia, misrepresenting to Plaintiffs the true price of the vehicle and cost of financing, misrepresenting the amounts that would be paid under their contracts and misrepresenting to the Plaintiffs the terms of their Service Contract and reasons for not timely repairing the 1998 Ford Windstar.

72.  Defendant Dealer engaged in unfair and deceptive practices by misrepresenting to Consumer or engaging in conduct as follows:

(a)  Making fraudulent and/or negligent representations, as hereinbefore alleged;

(b)  Failing to adequately and properly inform Plaintiffs of their rights and remedies with respect to the transactions which are the subject of this Complaint;

(c)  Failing to provide promised benefits, as herein alleged, including but not limited to benefits implied by law;

(d)  Causing a probability of confusion or of misunderstanding as to Plaintiffs' legal rights, obligations, and/or remedies with respect to the subject transaction;

(e)  Failing to disclose material facts as herein alleged;

    (f)       Charging an excessive price for the subject vehicle;

    (g)      Charging an excessive price for financing and/or more than disclosed to Plaintiffs;

    (h)      failing to comply with Plaintiffs' rejection, or in the alternative, revocation of acceptance of the Ford Windstar; and

    (i)       violating the terms of the Service Contract and the Magnuson-Moss Warranty Act.

73. On information and belief, Defendant Dealer intended that Plaintiffs rely upon the above-described misrepresentations, concealments and omissions.

74. The above-described actions were committed by Defendant Dealer willfully, wantonly and with reckless disregard of the rights of Plaintiffs.

75. This wrongful conduct damaged Plaintiffs in that they suffered:  the loss of the value of the Vehicle and personal property left in the Vehicle; damage to the Vehicle and personal property; loss of use, possessions and enjoyment of the Vehicle and their personal property; and infliction of severe emotional and psychological distress as well as humiliation.

76. This wrongful behavior was conducted intentionally, maliciously, or with reckless disregard for Plaintiffs' rights and interests.

77. The Plaintiffs have been injured as a result of Defendant Dealer's actions.

**WHEREFORE**, the plaintiff prays that this Court;

A. Enter judgment for Plaintiffs and against Defendant Dealer in the amount of $12,546.75 actual damages;

B. Enter judgment for Plaintiffs and against Defendant Finance Co. in the amount of $1,556.75 actual damages, and declare the remainder of the contract obligation void and unenforceable by Defendant Finance Co.;

C. Enter judgment for Plaintiffs and against Defendant Dealer in the amount of at least $20,000 treble damages; and

D. Award the Plaintiffs their costs and reasonable attorneys fees to be paid jointly and severally by Defendants Dealer and Finance Co.; and

E. Grant such other relief as may be just and proper.

## COUNT VI - BREACH OF DUTY OF GOOD FAITH

78. Plaintiffs hereby incorporates paragraph 1-77 above as if the same were fully set forth herein at length.

79. 13 Pa.C.S.A. requires that Defendants act in good faith.

80. Defendants owed to Plaintiffs a duty to deal fairly and in good faith pursuant to 13 Pa.C.S.A. § 1203. The Defendants breached this duty, inter alia, by charging an unconscionably high price for the vehicle, by charging a price different for them as credit customers than Defendants charged cash customers, and by failing to disclose the true amounts plaintiffs were being charged for securing financing.

81. Defendant Dealer breached its duty to act in good faith by failing to replace the transmission or otherwise repair the 1998 Ford Windstar in a timely manner.

82. Defendant Dealer breached its duty to act in good faith by refusing to repair the 1998 Ford Windstar in violation of their contract and for reasons totally unrelated to Plaintiff's Service Contract.

83. Defendants breach of its duty of good faith in violation of 13 Pa.C.S.A. § 1203 is wrongful.

84. This wrongful conduct damaged Plaintiffs in that they suffered: the loss of the value of the Vehicle; loss of use, possession, and enjoyment of the Vehicle; and infliction of severe emotional and psychological distress as well as humiliation.

85. This wrongful behavior was conducted intentionally, maliciously, or with reckless disregard for Plaintiffs' rights and interests.

86. All of the above actions and inactions on the parts of Defendants, jointly and severally, were done intentionally, maliciously and/or with gross negligence in complete and reckless disregard of the rights of Plaintiffs. Accordingly, punitive damages should be assessed against both Defendants.

**WHEREFORE**, Plaintiffs demand judgment for damages against Defendants for punitive damages in the amount of $20,000, and such other general relief to which Plaintiffs may be entitled, all to be assessed against all Defendants, jointly and severally, plus pre-judgment and post-judgment interest.

## COUNT VII -- VIOLATIONS TO THE TRUTH-IN-LENDING ACT

87. Plaintiffs hereby incorporates paragraph 1-86 above as if the same were fully set forth herein at length.

88. Plaintiff's transaction was a consumer credit transaction within the meaning of the Truth in Lending Act, 15 U.S.C. §§1601 et seq. ("TILA"), and Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

89. Defendant Dealer and Defendant Finance Co. are creditors within the meaning of the Truth in Lending Act, in that each has originated more than 25 consumer credit contracts per annum.

90. In the course of Plaintiffs' transactions, the Defendants violated the Truth-In-Lending Act by, *inter alia*, failing to disclose the hidden finance charge contained therein for inflated price, and charging a service contract fee that was not warranted in fact.

91. The premium for the service contract was imposed by Defendant Dealer and Defendant Finance Co. only in connection with the credit transaction and was an incident to the extension of credit. The premium for this service contract accordingly is covered by the general definition of "finance charge" in 12 C.F.R. §226.4.

92. Under TILA and Regulation Z, premiums for any service contract must be included in the finance charge unless the charge is uniformly imposed in cash and credit transactions. 12 C.F.R. §226.4(a).

93. Defendants did not allow Mrs. Storm to make a choice regarding the service contract.

94. Accordingly, the service contract charge was required to be included in the "finance charge" and the "annual percentage rate."

95. Defendants did not so include them, resulting in an understatement of the finance charge and annual percentage rate in the transaction of Plaintiff.

96. The violation is apparent on the face of Plaintiff's retail installment contract.

97. The retail installment contract assigned to Defendant Finance Co. provides by its terms that any holder is subject to claims and defenses which the buyers, Mr. and Mrs. Storm, have against the seller, Defendant Capital City Cars.

98. As a result of the aforesaid violations of the Truth-In-Lending Act and regulations, Defendants are liable to the Plaintiffs for actual damages, including (but not limited to) the excess hidden finance charge Plaintiffs were required to pay, and statutory damages of $1,000.00 each and reasonable attorneys fee.

**WHEREFORE,** Plaintiffs request that the Court grant the following relief on their behalf and against Defendants Dealer and Finance Co.:

a.    Statutory damages, as provided for in 15 U.S.C. §1640.

b.    Actual damages including but not limited to the excess finance charges thereon.

c.    Attorney's fees, litigation expenses and costs.

d.    Equitable relief, including but not limited to, rescission and/or cancellation of the subject finance contract;

e.    Such other and further relief as this Court deems appropriate.


## COUNT VIII—MOTOR VEHICLE SALES FINANCE ACT

99. Plaintiffs hereby incorporates paragraph 1-98 above as if the same were fully set forth herein at length.

100. The Motor Vehicle Sales Finance Act (the "MVSFA"), 69 P.S. § 619 and § 631, strictly limits the finance and other charges a car dealer may contract for and receive through an installment sale contract ("installment contract").

101. Section 619 limits the finance charge for Plaintiff's vehicle as follow:: "Older used motor vehicles of a model designated by the manufacturer by a year more than two (2) years prior to the year in which the sale is made, twenty-one percent (21%) simple interest per year on the unpaid balance."

102. Defendants violated Section 619 of the MVSFA by charging Plaintiffs more than the maximum limit of 21%.

103. Defendant Dealer violated the MVSFA in the following particulars:

a. By failing to provide Plaintiffs with the disclosures required under the act prior to Plaintiff's execution of the contract;

b. Based upon information and belief, by requiring the Plaintiffs to sign the contract with impermissible blank spaces;

c. By failing to provide Plaintiffs with a copy of the signed contract contemporaneously with the execution of the contract;

d. By including hidden finance charges and failing to show the charges for the Service Contract as required under the Truth In Lending Act.

104. Defendant Finance Co. is subject to all of Plaintiff's claims and defenses against Defendant Dealer pursuant to the Pennsylvania Code's Commercial Law Article and the Federal Trade Commission's Rule on Preservation of Consumer Claims and Defenses. 16 C.F.R. § 433, under the Retail Installment Contract, which Dealer assigned to Defendant Finance Co.

105. Violation of this Act is also a contemporaneous violation of the Pennsylvania Consumer Protection Law by these defendants, and as a result of Defendants' violations of the Act, Plaintiff is entitled to recover the treble damages of at least $20,000.00, together with reasonable costs and attorney fees.

106. As a further result of Defendants' violations of the Act, Defendants have contemporaneously violated the Pennsylvania Consumer Protection Law and the Truth in

Lending Act, and they are barred from recovery of interest or other finance charges arising out of the subject retail installment contract, and Plaintiffs are entitled to recover three times the amount of the interest charged in this matter in addition to statutory damages and reasonable costs and attorney fees.

**WHEREFORE,** Plaintiffs pray that this Honorable Court enter Judgment against Defendants, jointly and severally, as follows:

a. Order that Defendants accept return of the subject vehicle and refund Plaintiffs' down payment and payments made, together with incidental and consequential damages and cancel the subject retail installment contract or, alternatively, reform the subject contract as equity may require;

b. Award Plaintiffs damages in whatever amount above $20,000 they are found to be entitled, plus interest, costs and reasonable attorney fees; and

c. Such other and further relief as this Court deems appropriate.

Dated:                                          Respectfully submitted,

3/14/06

Stephen K. Portko, Esq. #34538
Bratic & Portko
101 South U.S. Route 15
Dillsburg, Pennsylvania 17019
(717) 432-9706
Attorney for Plaintiffs

**VERIFICATION**

I, Tanya M. Storm, hereby acknowledge that I am a Plaintiff in the foregoing

Complaint, that I have read the foregoing, and the facts stated therein are true

and correct to the best of my knowledge, information and belief.

I understand that any false statements herein are made subject to penalties of

18 Pa.C.S. Section 4904, relating to unsworn falsification to authorities.


DATE: _March 14, 2006_


_Tanya M. Storm_
Tanya M. Storm

# EXHIBIT "A"

# BUYERS GUIDE

**IMPORTANT: Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.**

VEHICLE MAKE          MODEL          YEAR          VIN NUMBER

DEALER STOCK NUMBER (Optional)

**WARRANTIES FOR THIS VEHICLE:**

☒ # AS IS-NO WARRANTY

**YOU WILL PAY ALL COSTS FOR ANY REPAIRS.** The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle.

☐ # WARRANTY

☐ FULL  ☐ LIMITED WARRANTY. The dealer will pay _____% of the labor and _____% of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty document for a full explanation of warranty coverage, exclusions, and the dealer's repair obligations. Under state law, "implied warranties" may give you even more rights.

**SYSTEMS COVERED:**                              **DURATION:**

☐ **SERVICE CONTRACT.** A service contract is available at an extra charge on this vehicle. Ask for details as to coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of the time of sale, state law "implied warranties" may give you additional rights.

**PRE PURCHASE INSPECTION: ASK THE DEALER IF YOU MAY HAVE THIS VEHICLE INSPECTED BY YOUR MECHANIC EITHER ON OR OFF THE LOT.**

**SEE THE BACK OF THIS FORM for important additional information, including a list of some major defects that may occur in used motor vehicles.**



FORM BFAS-HANG • TO REORDER CALL:
GREAT AMERICAN 1-800-231-0329

## Below is a list of some major defects that may occur in used motor vehicles.

**Frame & Body**
Frame-cracks, corrective welds, or rusted through
Dogtracks — bent or twisted frame

**Engine**
Oil leakage, excluding normal seepage
Cracked block or head
Belts missing or inoperable
Knocks or misses related to camshaft lifters and push rods
Abnormal exhaust discharge

**Transmission & Drive Shaft**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged case which is visible
Abnormal noise or vibration caused by faulty transmission or drive shaft
Improper shifting or functioning in any gear
Manual clutch slips or chatters

**Differential**
Improper fluid level or leakage excluding normal seepage
Cracked or damaged housing which is visible
Abnormal noise or vibration caused by faulty differential

**Cooling System**
Leakage including radiator
Improperly functioning water pump

**Electrical System**
Battery leakage
Improperly functioning alternator, generator, battery, or starter

**Fuel System**
Visible leakage

**Inoperable Accessories**
Gauges or warning devices
Air conditioner
Heater & Defroster

**Brake System**
Failure Warning light broken
Pedal not firm under pressure (DOT spec.)
Not enough pedal reserve (DOT spec.)
Does not stop vehicle in straight line (DOT spec.)
Hoses damaged
Drum or rotor too thin (Mfgr. Spec.)
Lining or pad thickness less than 1/32 inch
Power unit not operating or leaking
Structural or mechanical parts damaged

**Steering System**
Too much free play at steering wheel (DOT specs.)
Free play in linkage more than 1/4 inch
Steering gear binds or jams
Front wheels aligned improperly (DOT specs.)
Power unit belts cracked or slipping
Power unit fluid level improper

**Suspension System**
Ball joint seals damaged
Structural parts bent or damaged
Stabilizer bar disconnected
Spring broken
Shock absorber mounting loose
Rubber bushings damaged or missing
Radius rod damaged or missing
Shock absorber leaking or functioning improperly

**Tires**
Tread depth less than 2/32 inch
Sizes mismatched
Visible damage

**Wheels**
Visible cracks, damage or repairs
Mounting bolts loose or missing

**Exhaust System**
Leakage

---

DEALER

ADDRESS

SEE FOR COMPLAINTS

CUSTOMER SIGNATURE  X
(Dealer's Option)                I hereby acknowledge receipt of the Buyers Guide at the closing of this sale.

**IMPORTANT:** The information on this form is part of any contract to buy this vehicle. Removal of this label before consumer purchase (except for purpose of test-driving) is a violation of federal law (16 C.F.R. 455).

**EXHIBIT "B"**

**EXHIBIT "B-1"**



# Capital City Cars
Auto Financing Specialists

**CAPITAL CITY CARS**
800 S. Cameron St.
Harrisburg, Pa. 17104
**Phone (717) 221-8805**

## PLEASE ENTER MY ORDER FOR THE FOLLOWING

☐ NEW or ☐ USED ☐ DEMO ☐ CAR ☐ TRUCK  PRIOR USE:

| YR. | MAKE | MODEL | TYPE |
|---|---|---|---|
| 1998 | FORD | WINDSTAR | SW |

COLOR LT. GREEN  TRIM  MILEAGE 58,907

VIN 2 F M D A 5 1 U 6 W B B 1 6 6 3 8

STOCK NO. 2421  SALESMAN MIKE S  TO BE DELIVERED ON OR ABOUT 07/28/05

### DESCRIPTION OF TRADE IN

YR. MAKE MODEL TYPE
COLOR TRIM MILEAGE
VIN
TITLE NO. PLATE NO. EXP DATE
OWNER LOAN #
LIENHOLDER PHONE
ADDRESS SPOKE WITH
AMOUNT 0.00  GOOD TILL  VERIFIED BY

### COLLISION COVERAGE
NAME OF AGENT SAFE AUTO  PHONE 800-723-3288
ADDRESS 3883 E BROAD S COLUMBUS OH 43213-1129
POLICY NUMBER PA00284610A-00  COLLISION DEDUCTIBLE 0.00
INSURANCE CO. SAFE AUTO
EFFECTIVE DATE 05/12/2005  EXP DATE 11/12/2005  SPOKE WITH  VERIFIED BY

### WARRANTY INFORMATION

☐ FACTORY WARRANTY -The factory warranty constitutes all of the warranties with respect to the sale of this vehicle. The seller hereby expressly disclaims all warranties, either expressed or implied including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.
☐ USED CAR WARRANTY -Used car is covered by a limited warranty detailed in a separate document.
☑ AS IS -This motor vehicle is sold "AS IS" without any warranty either expressed or implied. The purchaser will bear the entire expense of repairing or correcting any defect that presently exists or that may occur in the vehicle.

PURCHASER'S SIGNATURE X

### USED CAR CONTRACTUAL DISCLOSURE STATEMENT
THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

If you cancel this purchase agreement or refuse to take delivery of the vehicle ordered, except as permitted by law, you shall, at our option, forfeit as damages the amount of $

PURCHASER'S SIGNATURE X

Purchaser hereby acknowledges he saw the above clause.

| NAME | HENRY S STORM JR | DATE |
| TANYA S STORM | | |

STREET 22 S 2ND ST
CITY NORMLEYSBURG PA 17043  STATE  ZIP
PHONE RES. 717-732-9505  PHONE BUS.
SOC. SEC. NO. 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  AGE 28  DATE OF BIRTH 12/19/19..

PRICE OF VEHICLE  5,49..

NEW TAG  1..

EXTENDED WARRANTY COST  9..
EXTENDED WARRANTY TYPE CCC SERVICE CONTRACT
MONTHS 24  MILES 30,000

Cash Price of Vehicle & Accessories  6,48..
Sales Tax  3..
REGISTRATION 58.00  TITLE 22.50  TRANSFER 0.00  ENCUMBRANCE .00
Documentary Fee
Messenger Fee
Notary Fee
PA. TIRE TAX

Total Price  6,58..

### TOTAL CREDIT
Trade-In  0.00
*Payoff Amount is Subject To Verification  Less Payoff *  0.00
Net Trade In  0.00
Deposit  0.00
Cash on Delivery  500.00
Net + Deposit + Cash on Trade Delivery  Total Down Payment  5..
Unpaid Balance of Total Price  6,48..

Purchaser agrees that this order includes all of the terms and conditions on both the face and reverse side hereof, that this order cancels and supersedes
prior agreement and as of the date hereof comprises the complete and exclusive statement of the terms of agreement relating to the subject matters co
hereby. This order shall not become binding until accepted by the dealer or his authorized representative. You, the buyer may cancel this contract and r
a full refund any time before receipt of a copy of this contract signed by an authorized dealer representative by giving written notice of cancellation to the
Purchaser by his execution of this order acknowledges that he has read its terms and conditions and has received a true copy of this order.

PURCHASER'S SIGNATURE X  DATE  ACCEPTED BY  DATE
DEALER OR HIS AUTHORIZED REPRESENTATIVE

Reynolds and Reynolds  AO18944-0

FAX NO.:14 03/27  06 16:08   ID:UNIVERSAL-UNDERWRITERS    FAX:                   PAGE 31/42

## STANDARD TERMS AND CONDITIONS

1. As used in this Order the term (a) "Dealer" shall mean the authorized Dealer to whom this Order is addressed and who shall become a party hereto by its acceptance hereof (b) "Buyer" shall mean the party executing this Order as such on the face hereof, and (c) "Manufacturer" shall mean the Corporation that manufactured the vehicle or chassis, it being understood by Buyer and Dealer that Dealer is in no respect the agent of Manufacturer, and that reference to Manufacturer herein is for the purpose of explaining generally certain contractual relationships existing between Dealer, Owner and Manufacturer with respect to new motor vehicles.

2. Buyer agrees to deliver to Dealer satisfactory evidence of title to any used motor vehicle traded hereunder at the time of delivery of such new motor vehicle to Dealer. Buyer warrants any such used motor vehicle to be his property free and clear of all liens and encumbrances except as otherwise noted herein.

3. Manufacturer has reserved the right to change the design of any new motor vehicle, chassis, accessories or parts thereof previously purchased by or shipped to Dealer or being manufactured or sold in accordance with Dealer's orders. Correspondingly, in the event of any such change by Manufacturer, Dealer shall have no obligation to Buyer to make the same or any similar change in any motor vehicle, chassis, accessories or parts thereof covered by this Order either before or subsequent to delivery thereof to Buyer.

4. Dealer shall not be liable for failure to deliver or delay in delivering the motor vehicle covered by this Order where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer.

5. The price for the motor vehicle specified on the face of this Order includes reimbursement for Federal Excise taxes, but does not include sales taxes, use taxes or occupational taxes based on sales volume, (Federal, State or Local) unless expressly so stated. Buyer assumes and agrees to pay, unless prohibited by law, any such sales, use or occupational taxes imposed on or applicable to the transaction covered by this Order, regardless of which party may have primary tax liability therefor.

6. The price for the motor vehicle specified above cannot be increased after the contract has been accepted by or on behalf of the Dealer unless the increase is due to the passage of a law or regulation or the United States or The Commonwealth which: requires the addition of new equipment to certain vehicles; changes in transportation costs or existing tax rates; or, in the case of foreign-made vehicles, is due to a revaluation of the United States dollar VIS-A-VIS the currency of the country of manufacture.

(FAA: 91001) RACK)

**EXHIBIT "B-2"**

# CAPITAL CITY CARS

SERVICE CENTER

800 - 830 SOUTH CAMERON STREET HARRISBURG, PA 17104

(717) 221-8010    FAX (717) 221-8826

## SERVICE CONTRACT

This contract is for 24 MONTHS/30,000 MILES whichever comes first. Buyer agrees to pay the first $100.00 of each covered repair and 100% of each non-covered repair.

### BASIC COVERAGE

The following systems and equipment, subject to any listed exclusions are covered by this contract.

**TRANSMISSION:** Automatic and standard transmission case and all internal lubricated parts – fly wheel and flex plate – torque converter housing

**ENGINE:** Cylinder block – cylinder head – all internal lubricated parts – oil pump and pan – timing chain or belts – camshaft and valve trai intake manifold – exhaust manifold – factory installed turbo charger/super charger (housing covered only if damaged by failure of an intern part).

**COOLING** Radiator – heater core – water pump – electric or mechanical fan – thermostat, thermostat gasket and housing – air condition compressor (factory installed).  NOTE: leaks and freon not covered.

**BRAKES:** Non-computerized master cylinder – wheel cylinders – calipers – metal brake lines – parking brake assembly and cables.

**ELECTRICAL:** Alternator – voltage regulator – starter motor and starter drive – windshield wiper motor and washer pump.

**SUSPENSION:** Upper and lower control arms – upper and lower ball joint – spindle – springs, only if cracked.

**STEERING:**      Rack and pinion, steering box, power steering pump, housing and all internal lubricated parts

**DRIVE TRAIN:** Axle shafts – front and rear drive axle assemblies and all internal lubricated parts – constant velocity joints – universal join transfer case; interlocking hubs – locking rings and retainers.

**ELECTRONIC RIDER:** Engine electronic control module, electric fuel pump, fuel injectors, coolant temperature sensor, oxygen sensor, thr position sensor, vehicle speed sensor, MAP sensor, knock sensor, electronic ignition module, relays, electronic anti-lock brake master cylin turn signal switch.  **Any part that is not specifically listed is not covered.**

| | | |
|---|---|---|
| Name | TANYA M STORM HENRY C STORM JR | Commencement Date 7/28/2005 |
| Address | 22 S 2ND ST | Phone No. 717-732-9505 |
| City | WORMLEYSBURG | State PA   Zip 17043- |
| Year 1998 | Make FORD   Model WINDSTAR | Mileage 96,907 |
| Stock No. 2481 | VIN No. 2FMDA61U6WBB16688 | Finance Contract No. |

This service contract is for:      30,000 miles or 24 months from commencement date, whichever comes first:

Customer pays the first $100 of each covered repair

| | | |
|---|---|---|
| Contract Charge | $ | 900.00 |
| 6% PA Sales Tax | $ | 54.00 |
| **TOTAL CHARGE** | $ | 954.00 |

The terms and conditions set forth on the back of this contract are a material part of this contract and are incorporated by reference.

Buyer:

Signature:  ~~TANYA M STORM~~
HENRY C STORM JR

Print name:

Date:  7/28/2005

Capital City Cars

By:   7/28/2005

Date:

White – Office          Yellow – Customer          Pink – Deal File

CAPITAL CITY CARS SERVICE CONTRACT

This contract is made between Capital City Cars (CCC) and the vehicle buyer whose name appears on the front of this contract herein referred to as Buyer.

1) THIS SERVICE CONTRACT represents the only obligation of CCC to the buyer. This contract is non-refundable. This contract contains the whole agreement between CCC and buyer regarding its subject matter. There are no other terms, obligations, covenants, representations or conditions, oral or otherwise of any kind whatsoever concerning this subject.

2) OBLIGATIONS OF CAPITAL CITY CARS (CCC) TO THE VEHICLE BUYER
If any of the covered items fail, due to defects brought about by normal operation and ordinary wear and tear during the period this service contract is in effect, CCC will repair, or at its option, replace the covered item with material of like kind and quality. At CCC option, an item can be re-manufactured or recycled. CCC will pay for all necessary labor and service at its repair center located at 830 South Cameron Street, Harrisburg, Pennsylvania. Improper or incorrectly performed repairs by someone other than CCC could void this service contract. CCC will use its best efforts to provide replacement parts like kind and quality to the original parts. But CCC shall not be liable for failure to match exactly the type of replacement parts. If replacement parts are generally available at ordinary prices or through ordinary marketing sources, replacement may be made with any item which will provide a like or similar service, use or function to the item replaced, or CCC may assess an extra charge based upon the value of the part or parts available through non-ordinary marketing sources. CCC shall have no obligation to replace a system or item of equipment due to non-availability of obsolete or discontinued parts. CCC will pay all costs of repair or replacement incurred for each service according to the co-deductible terms in this contract, but the total amount paid by CCC under this contract during its term shall not exceed $3,000 aggregate.

3) LIMITATION ON CCC OBLIGATION
   a) This contract applies only to those items, systems, and equipment listed under BASIC COVERAGE.
   b) CCC shall not be obligated to repair or replace any of the covered items if the operational failure is due to any one or more of the following:
      1) Failure to change engine oil and filter every three thousand miles or three months whichever comes first, or as required by the manufacturer.
      2) Failure to change transmission and other lubricants or fluids according to times and mileage recommended by the manufacturer.
      3) Failure to change timing belts or timing chains according to times and mileage recommended by the manufacturer.
      4) Failure to operate with sufficient lubricating oils or coolants or the use of such oils/coolants not recommended by the manufacturer.
      5) Failure to safely pull to the side of the road and shut motor off immediately when any warning lights/gauges indicate any problems with the operation of any mechanical components.
      6) Service or maintenance performed by a person other than a certified mechanic.
      7) The alteration, modification, or addition to, deletion from, or tampering with in any respect of vehicle equipment.
      8) The vehicle speedometer/odometer has been altered, tampered with or is inoperative.
      9) A use not intended by the manufacturer or any extraordinary use, such as, a use that is not normal and customary, e.g. towing a trailer that is over the manufacturer's recommended weight, using the vehicle for delivery, taxi, construction, racing, rental, for hire, or as a police car or other emergency vehicle.
      10) Freezing, fire, flood, water, ice, rust or corrosion, mud, explosion, use by an unauthorized person or persons, vandalism, malicious mischief, or any accident, occurrence or event that could have been insured under a standard or typical automobile insurance policy.
      11) Willful damage or destruction.
      12) Neglect or failure to service or maintain in accordance with manufacturer's recommendations.
      13) Consequential damage caused by a failure of a covered or a non-covered component.
      14) Damage occurring as the result of continued operation after failure of a covered or non-covered component.
      15) Constant velocity joints will not be covered if damage is caused by boot perforation, deterioration, or missing or broken fasteners.
      NOTE: Head gasket covered if compression or coolant is leaking. Intake manifold gasket covered if vacuum or coolant is leaking. Exhaust manifold gasket covered if exhaust gas is leaking.
   c) ITEMS NOT COVERED BY THIS SERVICE CONTRACT: systems and equipment that are subject to normal wear and tear and must be periodically replaced such as, but not limited to: tires-battery-belts-hoses-brake drums and shoes-brake rotors and pads-rubber or steel braided brake hoses-shock absorbers-McPherson struts-fasteners-nuts-bolts-wire looms and connectors-standard transmission slave cylinder, clutch, pressure plate, throwout bearing and linkage-transmission module-seals and gaskets-cylinder head valve guides or valve guide seals-oil or fluid leaks-excessive oil consumption-evacuation or recharge of air condition system, freon, replacement of air conditioning "O" ring seals, conversion from R12 to R134 air conditioner freon gas, damage caused by freon depletion-cooling fan relay-axle hubs or bearings-constant velocity joint boots or fasteners-fuel pump or fuel systems including carburetor or fuel injection system-electronic transmission switches, sensors-solenoids-any electrical, air or hydraulic suspension system or controls-motor/transmission mounts-power seat memory control.
   d) LOSS OF TIME OR WORK: CCC shall not be liable or responsible for any loss or inconvenience Buyer may incur including but not limited to:
      1) Loss of transportation, loss of income, motel or lodging expense, injury, death, or property damage.
      2) Any incidental or consequential damage that Buyer may incur. CCC is not responsible for the time taken to make covered repairs.

4) CHARGES TO BUYER
   a) $100 Deductible Amount: Buyer will pay the first $100 of each covered repair. The Buyer will pay 100% of all non-covered costs directly to CCC service center.
   b) Costs Not Covered: Charges for diagnostic services, inspection report, sales tax, repairs or replacement of components that are not covered by this service contract.

5) NOTICE OF OPERATIONAL FAILURE OR MALFUNCTION shall be given to CCC no later than five (5) days after the occurrence but, in any event, prior to the expiration date of this contract, regardless of when the failure or malfunction actually occurred. CCC shall not be obligated for repair or replacement of any equipment not repaired on or before the expiration date of this service contract. CCC labor will be based on industry accepted flat rates to repair or replace any covered system or equipment.

6) BUYER'S COOPERATION
Buyer shall cooperate fully with CCC in the scheduling of service. Buyer shall sign all forms, requests, releases or verifications of performance deemed necessary or desirable by CCC. If any equipment to be replaced or repaired is covered by another warranty or guarantee, the other warranty will be considered primary and that guarantee shall be primary.

7) TERMINATION OF CONTRACT
Regardless of any other provision, this contract shall automatically terminate without further action by CCC and CCC shall have no obligation to Buyer under one or more of the following circumstances:
   a) The reaching of 11:59 pm prevailing time, on the date of expiration stated in this contract, or, attainment of miles covered by this contract.
   b) Buyer shall have leased or otherwise conveyed or transferred ownership of the vehicle described in this contract.
   c) If the Buyer has vehicle on consignment to an automobile dealership.
   d) Buyer has stopped using vehicle for personal use.
   e) Discovery by CCC of a misrepresentation of any material fact or circumstance on the application endorsement, or claim under the service contract period.

8) WAIVER
If CCC should waive any right or make any exception under this contract it shall not mean that CCC will waive that right or make that exception again in the future.

9) ASSIGNMENT
This service contract for the subject vehicle shall not be transferred to a subsequent owner of the vehicle.

**EXHIBIT "C"**

FORM PA 23-SLC (Rev. 3/03)  **SIMPLE INTEREST**

**PENNSYLVANIA**
**MOTOR VEHICLE INSTALLMENT SALE CONTRACT,**  Dated _____

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 500.00 |
|---|---|---|---|---|
| 19.9 % | $ 1483.20 | $ 6407.20 | $ 7890.40 | $ 8390.40 |

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due | WEEKLY |
|---|---|---|---|
| 112 | $ 70.45 | Monthly beginning | 8-19-05 |
| | $ | | |

**Security:** You are giving a security interest in the motor vehicle being purchased.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

Filing Fees: $ 5.00

**Late Charge:** If a payment is late, you will be charged 2% of the portion of the payment which is late for each month, or part of a month greater than 10 days, that it remains unpaid.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

In this Contract we are the SELLER: CAPITAL CITY CARS   800 SOUTH CAMERON STREET  HARRISBURG, PA 17_

| You are the BUYER(S). | Name (1) TANYA R STORM  22 S 2ND ST  WORMLEYSBURG PA 17043- | Address | Zip Code |
| | (2) HENRY C STORM JR  22 S 2ND ST  WORMLEYSBURG PA 17043- | | |
| | Name(s) | Address(es) | Zip Code(s) |

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

IF YOU DO NOT MEET YOUR CON... OBLIGATIONS, YOU MAY LOSE THE VEHICLE AND PROPERTY THA... BOUGHT WITH THIS CONTRACT, A... MONEY ON DEPOSIT WITH THE ASS...

This Contract is between Seller and B... disclosures have been made by Seller intends to assign this Contract to the As...

**TRADE-IN:**
You have traded in the following vehicle: _____
Year and Make _____  Description _____

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the Itemization of Amount Financed as the "Lien Payoff."

**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

By signing, you select Single Credit Life Insurance, which costs $ _____ N A    What is your age? _____ Years

Signature of Buyer to be insured for Single Credit Life Insurance

By signing, you both select Joint Credit Life Insurance, which costs $ _____ N A    What are your ages? _____

1. _____
2. _____
Signatures of both Buyers to be insured for Joint Credit Life Insurance

By signing, you select Single Credit Accident & Health Insurance, which costs $ _____ N A    What is your age? _____ Years

Signature of Buyer to be insured for Single Credit Accident & Health Insurance

By signing, you both select Joint Credit Accident & Health Insurance, which costs $ _____    What are your ages? _____

1. _____
2. _____
Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

Percentage to be insured _____ %

Insurer: _____ N A

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| U | 1998 FORD | | WINDSTAR | 6 | | 2FMDA5112WBB16586 |

Equipped with ___ A.T. ___ P.S. ___ AM-FM Stereo ___ 5 Spd. Other ___
___ A.C. ___ P.W. ___ AM-FM Tape ___ Vinyl Top

**Itemization of Amount Finan...**

| Cash Price | $ 5495.00 |
|---|---|
| Cash Downpayment | $ 500.00 |
| Trade-In | |
| Value of Trade-In | $ |
| Lien Payoff to : | $ |
| Unpaid Cash Price Balance | $ 4995.00 |
| To Credit Insurance Company | $ |
| To Public Officials for: | |
| License, Tags and Registration | $ 123.50 |
| Lien Fee | $ 5.00 |
| To TAXES | $ 387.70 |
| To PRICE AMOUNT | $ 900.00 |
| To _____ | $ |
| To _____ | $ |
| Amount Financed | $ 6407.20 |
| Finance Charge | $ 1483.20 |
| Total of Payments (Time Balance) | $ 7890.40 |

Payment Schedule - You agree to...

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when...

which costs $ _____ _____ Years | Health Insurance, which costs $ _____ | What is your _____ | To Credit Insurance Company

Signature of Buyer to be insured for Single Credit Life Insurance | age? _____ Years | $ _____

By signing, you both select Joint Credit Life Insurance, which costs $ _____ | What are your ages? | Signature of Buyer to be insured for Single Credit Accident & Health Insurance | To Public Officials for License, Tags and Registration

1. _____ | By signing, you both select Joint Credit Accident & Health Insurance, which costs $ _____ x _____ | What are your ages? | Percentage to be insured | $ 123.50

2. _____ | Lien Fee $ 5.00

Signatures of both Buyers to be insured for Joint Credit Life Insurance | 1. _____ % | To TAXES $ 382.70

2. _____ | Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance | % | To SERVICE AGREEMENT $ 900.00

Insurer: N/A | To _____ $ _____

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract. | To _____ $ _____

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number | To _____ $ _____ |

1988 FORD | WINDSTAR | G 2FABP81U84GB18888 | To _____ $ _____

Equipped with | __ A.T. __ P.S. | __ AM-FM Stereo | __ 5 Spd. | Other __ | **Amount Financed** $ 6407.20

__ A.C. __ P.W. | __ AM-FM Tape | __ Vinyl Top | **Finance Charge** $ 1483.20

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment. | **Total of Payments (Time Balance)** $ 7890.40

**RELIANCE FINANCE COMPANY,** 800 S. Cameron Street, Harrisburg, PA 17104 | **Payment Schedule** - You agree to pay to us the Amount Financed plus interest in 112 payments of $ 70.45 each, and a final payment of $ 70.45. The first payment will be due on 8-19-05, and then payments will be due on that same day of each month following WEEKLY

**CO-SIGNER:** Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. Co-Signer will not be an Owner of the Vehicle.

**CO-OWNER:** Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

**TERMS:** The terms shown in the boxes above are part of this Contract.

**PROMISE TO PAY:** You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-In, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You agree to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

**SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle, in all parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

**ADDITIONAL TERMS AND CONDITIONS:** THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

**NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

SELLER _____

BY: _____ _____ (Date)

BUYER _____ (SEAL) _____ (Date)

BUYER _____ (SEAL) _____ (Date)

**CO-SIGNER: YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.**

**CO-SIGNER'S AGREEMENT:** You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

Co-Signer's Signature _____ (SEAL) | Address _____ | Date _____

Co-Signer's Signature _____ (SEAL) | Address _____ | Date _____

**CO-OWNER'S SECURITY AGREEMENT:** You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a security interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise to Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due under this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

Co-Owner's Signature _____ (SEAL) | Address _____ | Date _____

BUYER, CO-SIGNER AND CO-OWNER, AS APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.

_____ BUYER | _____ CO-SIGNER | _____ CO-SIGNER OR CO-OWNER

CONSUMER FORM PA 23-SLC (Rev. 3/03) | **NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

**EXHIBIT "D"**

November 29, 2005

Dealer: Capital City Cars
       800 South Cameron Street
       Harrisburg, PA 17104

Creditor: Reliance Finance Company
       800 South Cameron Street
       Harrisburg, PA 17104

**RE: Rejection/Revocation of acceptance**

Dear Sir/Madam:

We reject or revoke our acceptance of the 1998 Ford Windstar SW, VIN
2FMDA51U6WBB16688 [hereinafter "**Windstar**"] we purchased from Capital City Cars
on July 28, 2005. As you know, we have had serious problems with this vehicle.
Specifically, the transmission stopped working and the vehicle cannot be operated.
Although we have returned the car to you and asked you to inspect it and make the
necessary repairs as provided under the Service Contract you sold to us when we
purchased the vehicle, you have not done so. In fact, we still don't know the extent of the
problems with the vehicle because you have not attempted to make the required repairs.
As you also know, we purchased two vehicles from you because each of us needed our
own vehicle and the **Windstar** has been Tanya's sole means of transportation.

What we do know is that the vehicle you sold us is defective including but not
limited to the faulty transmission. Although we have returned the **Winstar** to you in
early October 2005, no attempts have been made by you to repair the defects. Because of
such defects the **Windstar** does not conform to the applicable warranties and/or other
contract requirements and this nonconformity substantially impairs the **Winstar**'s value
to us. As we have already informed you, these problems have caused us great expense,
inconvenience, and aggravation because it was needed for work and daily transportation
needs. Because we are canceling the sale, we are entitled to a return of all money paid
toward the purchase price, including;

| | | |
|---|---|---|
| $ | 500.00 | down payment |
| $ | 1,120.00 | [16 payments] amount of payments I have paid |
| $ | 900.00 | cost of service contract |

| $ | 123.50 | license, tags and registration |
|---|--------|--------------------------------|
| $ | 5.00 | lien fee |
| $ | 383.70 | sales tax |
| $ | 3,032.20 | **TOTAL** |

Should you fail to respond immediately, we will also seek incidental and consequential damages, including substitute transportation costs. Under the Pennsylvania Uniform Commercial Code, U.C.C. § 2-711(3) we have a security interest in the **Windstar** for return of the total amount above. Since we have returned the vehicle to Capital City Cars, we hereby demand return of our $3,032.20 at this time.

If Capital City Cars and any assignee or creditor subject to the FTC Holder Rule have filed a financing statement covering the goods, we demand, pursuant to U.C.C. § 9-404, that you file a termination statement within ten days to terminate your security interest and send us a copy at our attorney's address below. Because we have rejected or revoked our acceptance, there is no outstanding secured obligation. If you do not file a termination statement within ten days and cooperate in removing the lien, you will be liable under U.C.C. § 9-404(1) in the amount of $100 plus any loss caused us by your failure. Further, as we are rightfully revoking acceptance, we are not in default and any report by you to any credit reporting agency that we are in default will be considered wrongful.

If you have any further questions, please feel free to call our attorney, Stephen K. Portko, Esquire, **BRATIC & PORTKO**, 101 South U.S. Route 15, Dillsburg, PA 17019 at (717) 432-9706. If our attorney has not heard from you by 12/15/2005, we will assume that you are refusing to comply with our rejection/revocation of acceptance and we will proceed accordingly to pursue our legal remedies.

Sincerely,

*Tanya M Storm*

Tanya M. Storm
Henry C. Storm, Jr.
43 East Columbia Road
Enola, PA 17025

EXHIBIT "E"

# BRATIC & PORTKO
## 101 South U.S. Route 15
## Dillsburg, PA 17019

Dusan Bratic, Esquire
Stephen K. Portko, Esquire

Office:    (717) 432-9706
Fax:     (717) 432-9220
Email: braticportko@aol.com

November 29, 2005

Capital City Cars
800 South Cameron Street
Harrisburg, PA 17104

Reliance Finance Company
800 South Cameron Street
Harrisburg, PA 17104

### RE: Sale of 1998 Ford Windstar and
### Buyers' Rejection/Revocation of Acceptance

Dear Sir or Madam:

Please be advised that Tanya and Henry Storm have retained this office to represent them regarding their claims against you arising for a defective Ford Windstar van that was purchased in July of 2005. Attached is our clients' Rejection/Revocation of Acceptance letter.

Kindly contact me to make arrangements for canceling the contract and repayment of moneys paid to you, including the enumerated damages. In the event you do not contact us within the time period requested, our client has authorized us to commence suit. This will also include separate claims for the violation of State and Federal laws regarding your Service Contract deal and your engagement in unfair and deceptive trade practices. I suggest you give this matter your immediate attention.

Very truly yours,

Stephen K. Portko
SKP/rsr
cc: Tanya and Henry Storm

## CERTIFICATE OF SERVICE

I, JEFFREY C. SOTLAND, ESQUIRE, do hereby certify that a true and correct copy of the within **PETITION FOR REMOVAL** was forwarded by United States First-Class Mail, postage pre-paid on the date named below to the below-named parties, as follows:

> Stephen K. Portko, Esquire
> **BRATIC & PORTKO**
> 101 South U.S. Route 15
> Dillsburg, PA 17019

_____
JEFFREY C. SOTLAND, ESQUIRE

Dated: 03/30/06